1
2
3
4
5
6
7
8
9
10
11

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMERICANWEST BANK, a Washington State chartered bank, | ) ) ) | Case No. 12cv1786 AJB (BGS) |
| Plaintiff, | ) ) ) | **IN ADMIRALTY** |
| v. | ) ) ) ) ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE; AUTHORIZING USE OF VESSEL BROKER; AND AUTHORIZING PLAINTIFF TO CREDIT BID AT THE SALE** |
| P/V INDIAN, Official No. 526530, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*, and INDIAN SPORT FISHING, INC., a California corporation, *in personam*, Defendants. | ) ) ) ) ) ) ) | |
| | ) | (Doc. No. 14) |
| | ) ) | F.R.C.P. Supplemental Admiralty Rules C and E. |
| _____ | ) ) | 46 U.S.C. Sections 30101-31343 |

Presently before the Court is Plaintiff AmericanWest Bank's ("Plaintiff") Motion for Interlocutory Sale of the Defendant Vessel P/V INDIAN, Official No. 526530 (the "DEFENDANT VESSEL"), and all of her engines, tackle, accessories, equipment, furnishings and appurtenances. (Doc. No. 14.) Should the Court grant Plaintiff's Motion for Interlocutory Sale, Plaintiff also requests permission to market the vessel in advance of the U.S. Marshal sale and authorization for Plaintiff to credit bid at the sale. (*Id.*) For the reasons discussed below, the Court **GRANTS** the

1    Plaintiff's Motion.

2                                    **_BACKGROUND_**

3          Defendant Indian Sport Fishing, Inc. ("Indian Sport Fishing") purchased the

4    DEFENDANT VESSEL on or about February 22, 2006.  (Doc. No. 14, Ex. B.)  Indian

5    Sport Fishing, through Christopher M. Randel ("Mr. Randel"[1]), President of Indian

6    Sport Fishing, delivered a promissory note and business loan agreement in the amount

7    of $296,000 to Point Loma Community Bank on or about January 9, 2009.  (Doc. No.

8    1, Ex. A–Business Loan Agreement, Ex. B–Promissory Note.)  Plaintiff

9    AmericanWest Bank is the successor in merger to Point Loma Community Bank.[2]

10   (Doc. No. 1.)

11         The promissory note was secured by a preferred ship mortgage on the

12   DEFENDANT VESSEL.  (Doc. No. 1, Ex. E–Preferred Ship Mortgage.)   The

13   business loan agreement and promissory note provide that, upon default, the lender

14   has the right to demand that the borrower immediately pay any remaining principal

15   and all accrued interest.  (Doc. No. 1, Ex. A–Business Loan Agreement, Ex.

16   B–Promissory Note.)  If Plaintiff was forced to sue to enforce the terms of the

17   promissory note, the note required that Indian Sport Fishing pay Plaintiff's attorneys'

18   fees and costs.  (*Id.*)  Mr. Randel personally guaranteed the full and punctual payment

19   of the promissory note should Indian Sport Fishing default on its payments.  (Compl. ¶

20   7.[3])

21         Plaintiff alleges that Indian Sport Fishing breached the Promissory Note and

22   

23   [1]In Exhibit D (Change in Terms Agreement) of the Plaintiff's Complaint, Mr. Randel's name is
     spelled "Christopher M. Randal."  In every other document submitted to the Court, Mr. Randel's
24   name is spelled "Christopher M. Randel."  Therefore, the Court will refer to Mr. Randel as "Mr.
     Randel."

25   
     [2]On January 20, 2012, AmericanWest Bank entered into a change in terms agreement with Indian
26   Sport Fishing, signed by Mr. Randel.  The change in terms agreement altered the payment schedule
     and interest rate of the original note, but still incorporated the previous agreements.  (Doc No. 1 ¶ 8,
27   Ex. D–Change in Terms Agreement.)

28   [3]All references to the Complaint in this Order refer to Plaintiff's Verified Complaint, filed on July
     19, 2012.

Preferred Ship Mortgage by failing to pay the amount owed to Plaintiff.  (Compl. ¶ 12.)  Although Plaintiff has not provided the specific date when Indian Sport Fishing stopped making its payments, Plaintiff states that, as of July 11, 2012, Indian Sport Fishing owed $274,453.07 on the note.  (Compl. ¶ 13.)  On July 16, 2012, Plaintiff filed the Verified Complaint ("Complaint") alleging Indian Sport Fishing breached the promissory note and requesting that DEFENDANT VESSEL be sold to satisfy Indian Sport Fishing's debt.  (Doc. No. 1.)  On July 23, 2012, the Court issued a warrant for the arrest of the DEFENDANT VESSEL.  (Doc. No. 6.)  Plaintiff states that the date of arrest was July 31, 2012.  (Doc. No. 14, 5:21-22.)  The Court received notice of the arrest on August 1, 2012.  (Doc. No. 8.)

Indian Sport Fishing never filed an answer to Plaintiff's Complaint.  On December 6, 2012, the Clerk of Court filed an Entry of Default as to Defendants.  (Doc. No. 13.)  On December 6, 2012, Plaintiff filed the instant Motion for Interlocutory Sale of Defendant Vessel ("Motion") pursuant to Supplemental Admiralty Rule E(9)(a)(i) of the Federal Rules of Civil Procedure ("Rule E(9)(a)(i)").[4] Indian Sport Fishing has not opposed Plaintiff's Motion and has not made any attempt to secure the DEFENDANT VESSEL.

### *DISCUSSION*

Plaintiff makes three requests in the instant motion: (1) request for interlocutory sale of DEFENDANT VESSEL; (2) request to hire a vessel broker to market the vessel in advance of the sale; and (3) request for authorization to credit bid at the sale.  (Doc. No. 14.)  The second and third requests are contingent upon the Court granting Plaintiff's request for interlocutory sale.  Accordingly, the Court addresses first the request for interlocutory sale, and will then consider Plaintiff's additional requests in turn.

---

[4]Plaintiff cites to Supplemental Admiralty Rule E(9)(B) throughout its brief.  However, because Plaintiff relies upon language from Rule E(9)(a)(i), the Court treats Plaintiff's Motion as properly brought under this provision.

## I.      Plaintiff's Request for Interlocutory Sale

Plaintiff argues that the Court should order the DEFENDANT VESSEL be sold based on all three criteria of Rule E(9)(a)(i).

> Rule E(9)(a)(i) provides that [o]n application of a party ... the court may order all or part of the property sold—with the sale proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if: (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing the release of the property.

To justify an interlocutory sale, Plaintiff need only establish the existence of one of the three provisions listed in Rule E(9)(a)(i). *Bank of Rio Vista v. VESSEL CAPTAIN PETE*, No. C 04-2736CW, 2004 WL 2330704, at *2 (N.D. Cal. Oct. 14, 2004).  The Court discusses each of the three provisions under Rule E(9)(a)(i) individually below.

### A.      *Deterioration, Decay, or Injury*

Plaintiff first argues that the DEFENDANT VESSEL is subject to "deterioration, decay, or injury" because it is sitting idle in salt water, and thus, interlocutory sale is warranted under the first provision of Rule E(9)(a)(i)(A).  (Doc. No. 14, 4:6-14.)  However, Plaintiff has not provided the Court with any evidence that the DEFENDANT VESSEL is particularly susceptible to deterioration, decay, or injury beyond the generalized assertion that unused vessels deteriorate over time.  (*Id.*)  Because there is no specific evidence suggesting deterioration,  decay, or injury that is out of the ordinary for a vessel generally, the Court does not find interlocutory sale of the DEFENDANT VESSEL warranted under Rule E(9)(a)(i)(A).  *See Vineyard Bank v. M/Y Elizabeth I,* No. 08CV2044 BTM (WMC), 2009 WL 799304, at *1 (S.D. Cal. Mar. 23, 2009) (stating that a general assertion of a vessel's deterioration without evidence of specific injury does not satisfy the "deterioration, decay, or injury" provision of Rule E(9)(a)(i)); *cf. Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981) (upholding district court's decision to grant interlocutory sale in part due to deterioration of the vessels when

1    district court received expert testimony detailing the deterioration of the defendant

2    vessels due to corrosion and rust, and thus requiring costly overhaul, because they sat

3    idle).  Accordingly, the Court turns to the second provision under Rule E(9)(a)(i).

4                  **B.      Excessive or Disproportionate Expense**

5           Plaintiff next asserts that sale of the DEFENDANT VESSEL is justified under

6    Rule E(9)(a)(i)(B) because the expense of maintenance while the vessel is in custody

7    is excessive and disproportionate.  (Doc. No. 14, 5:6-20).  Currently, Plaintiff states

8    that the maintenance expenses include the cost of wharfage services ($696.00 per

9    month), daily custodial services ($29.00 per day/ approximately $870.00 per month),

10   and interior inspection services ($200 per month), totaling approximately $1,766.00

11   per month.  (Doc. No. 14, 5:13-20.)  Since the arrest of the DEFENDANT

12   VESSEL on July 31, 2012, the *custodia legis* expenses have totaled approximately

13   $7,475.22.[5]  (Doc. No. 14, 5:23-24.)

14          Under the circumstances and considering the length of time the DEFENDANT

15   VESSEL has been under Plaintiff's custodianship and the total amount of money

16   Plaintiff has had to pay in *custodia legis* expenses, the Court finds these costs

17   excessive and disproportionate under the second provision of Rule E(9)(a)(i)(B).  *See*

18   *Vineyard Bank*,  2009 WL 799304, at *2 (finding that a total of $7,473.82 of *custodia*

19   *legis* expenses since the vessel's arrest was an excessive cost); *Merchants Nat. Bank of*

20   *Mobile*, 663 F.2d at 1340-43 (holding that $17,000 total in maintenance and insurance

21   fees per month for eight defendant vessels was excessive when defendant did not

22   attempt to secure the vessels for eight months); *Caterpillar Fin. Services Corp. v.*

23   *Coleman*, 99-03821 CM RZX, 1999 WL 33218595, at *2 (C.D. Cal. Aug. 19, 1999)

24   (finding that the "expense of keeping the [Defendant Vessel] in custody, specifically

25   $1,400.00 per month, ... appears to be excessive").  Here, Indian Sport Fishing has not

26   attempted to post bond or otherwise secure the release of the DEFENDANT VESSEL.

27

28   [5] Presumably, Plaintiff has incurred an additional two months' worth of charges since the filing of
     the instant Motion on December 7, 2012, bringing the approximate total of *custodia legis* expenses
     to $11,007.22.

1   As such, the Court finds that the maintenance fees of approximately $1,766.00 per

2   month are excessive under the circumstances and, thus, the interlocutory sale of

3   DEFENDANT VESSEL is warranted under Rule E(9)(a)(i)(B).

### C.   Unreasonable Delay in Securing the Release of the Property

5   Lastly, Plaintiff argues that because Indian Sport Fishing has not made any

6   attempt to secure the release of the DEFENDANT VESSEL, there has been an

7   unreasonable delay in securing the release of the property, warranting sale.  Generally,

8   courts will only grant a motion for interlocutory sale if the defendant has been

9   afforded a reasonable amount of time to post a bond to secure the vessel.  *Bank of Rio*

10  *Vista*, 2004 WL 2330704, at *2.  As such, courts should allow defendants "at least

11  four months to bond a vessel absent some other considerations."  *Id.*  When a

12  defendant has had at least four months to secure the vessel but has not filed any

13  response or made any attempt to obtain the vessel's release, courts may grant

14  interlocutory sale based upon unreasonable delay under Rule E(9)(a)(i)(C).  *Vineyard*

15  *Bank*,  2009 WL 799304, at *2.

16  Here, Indian Sport Fishing has not answered Plaintiff's Complaint or filed any

17  response to this action or the instant Motion.  Nor has Indian Sport Fishing made any

18  attempt to secure the DEFENDANT VESSEL's release since its arrest on July 31,

19  2012.  At this point, more than five months have passed since the DEFENDANT

20  VESSEL's arrest.  In light of these circumstances, the Court finds that there has been

21  unreasonable delay in securing the DEFENDANT VESSEL's release, which warrants

22  interlocutory sale under the third provision of Rule E(9)(a)(i).

### D.   Conclusion

24  In sum, two of the three provisions under Rule E(9)(a)(i) weigh in favor of the

25  interlocutory sale.  Therefore, in light of the excessive monthly expense of the

26  DEFENDANT VESSEL's maintenance and Indian Sport Fishing's unreasonable

27  delay in posting a bond to secure the DEFENDANT VESSEL, the Court GRANTS

28  Plaintiff's Motion for Interlocutory Sale under Rule E(9)(a)(i).  Having granted

Plaintiff's request for interlocutory sale, the Court now turns to Plaintiff's additional

requests for retention of a vessel broker and authorization to credit bid at the sale.

## II.     Plaintiff's Request to Use a Vessel Broker to Market Vessel Prior to Sale

         Under Rule E(9), the Court has the authority to order the sale of an arrested

vessel and has done so here for the reasons set forth above.  Accordingly, Plaintiff

asks that the Court allow a professional yacht brokerage, specifically Long Beach

Yacht Sales, Inc. ("Long Beach Yacht Sales"), to market the DEFENDANT VESSEL

in advance of the auction by the United States Marshal.  Plaintiff suggests that the

advanced marketing of a vessel increases the interest in the vessel and thus,

potentially, may maximize the vessel's value at auction.  (Doc. No. 14, 8:10-12.)  As

such, this process may increase the chances that the creditor will be able to recover the

full amount currently due under the promissory note.  (*See* Doc. No. 14, 8:10-20.)

         Having reviewed the Plaintiff's plan to market the vessel in advance of the

vessel sale, the Court finds Plaintiff's arguments in favor of marking the

DEFENDANT VESSEL persuasive.  The Court finds Plaintiff's request is reasonable

under the circumstances and narrowly tailored to accomplish the task at hand.  Thus,

the Court GRANTS Plaintiff's request to allow Long Beach Yacht Sales to undertake

marketing measures for 45 to 60 days following the date of this order in a best faith

attempt to generate as much interest by potential buyers as possible in the

DEFENDANT VESSEL prior to the U.S. Marshal auction.

## III.    Plaintiff's Request for Authorization to Credit Bid

         Plaintiff has also requested that the Court allow it to credit bid at the auction of

the DEFENDANT VESSEL in an amount not exceeding $274,453.07, the amount

which Plaintiff asserts Indian Sport Fishing owes on the note.  (Doc. No. 14, 12:4-11.)

Plaintiff currently holds a preferred ship mortgage on the DEFENDANT VESSEL.

(Doc. No. 1, Ex. E–Preferred Ship Mortgage.)  When the court orders an interlocutory

vessel sale in a civil action in rem brought to enforce a preferred mortgage lien, the

preferred mortgage lien "has priority over all other claims against the vessel, except

1    for expenses and fees allowed by the court, costs imposed by the court, and preferred

2    maritime liens." 46 U.S.C. § 31326(b)(1)(2006).  Civil Local Rule E.1.e.2 provides

3    that:

4              When the court determines on the merits that a plaintiff or
               plaintiff in intervention has a valid claim senior in priority to
5              all other parties, that plaintiff in intervention foreclosing a
               properly recorded and endorsed preferred mortgage on, or
6              other valid security interest in the vessel may bid, without
               payment of cash, certified check or cashier's check, up to the
7              total amount of the secured indebtedness as established by
               affidavit filed and served on all other parties no later than
8              seven (7) days prior to the date of sale.

9    Civ. L. R. E.1.e.2; *see also Vineyard Bank*, 2009 WL 799304, at *2 (allowing the

10   plaintiff to credit bid in the amount of indebtedness under Civil Local Rule E.2 when

11   no other creditor appeared in the action and the plaintiff had a preferred ship

12   mortgage).

13         Plaintiff represents to the Court that it is unaware of any preferred maritime

14   liens existing against the DEFENDANT VESSEL other than its own.  (Doc. No. 14,

15   11:25-26).  Indian Sport Fishing has not come forward to challenge the Plaintiff's

16   action or validity of Plaintiff's preferred ship mortgage.  In addition, no other

17   claimants or creditors have appeared in this action within the time specified by the

18   Supplemental Admiralty Rule C(6).[6]  Thus, it appears that Plaintiff's preferred ship

19   mortgage has priority over all other claims against the DEFENDANT VESSEL,

20   except for the expenses and fees allowed and costs imposed by the Court in this

21   action.[7]  Accordingly, the Court GRANTS Plaintiff's request to bid in an amount not

22   to exceed $274,453.07 at the sale of the DEFENDANT VESSEL.

23                              ***CONCLUSION***

24         For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for

25

26   [6] Under Supplemental Admiralty Rule C(6)(a), a person who asserts an ownership interest in the
     property that is the subject of an action has fourteen (14) days, or however much time the Court
     allows, to file a verified statement of right or interest in the property.

27

28   [7] The Court notes that Plaintiff must comply with Civil Local Rule E.1.e.2's requirement that it serve
     an affidavit, swearing to the amount of debt owed on the promissory note, on all parties no later than
     seven days prior to the date of sale.

1   Interlocutory Vessel Sale and Authorization to Credit Bid.  (Doc. No. 14.)

2   Accordingly, **IT IS HEREBY ORDERED**:

3       (1) Consistent with Supplemental Admiralty Rule (E)(9) and Civil Local Rule

4   E.1.e.2, the United States Marshal will conduct an auction to sell the DEFENDANT

5   VESSEL and the proceeds distributed in the manner detailed in this Order; and

6       (2) In an effort to maximize the value of the *res* and hence the potential for

7   satisfaction of PLAINTIFF's maritime lien, Long Beach Yacht Sales, Inc. is

8   permitted, on the below terms and for a period of at least 45 days but not more than 60

9   days following entry of this Order, to market the DEFENDANT VESSEL in advance

10  of the U.S. Marshal auction of the DEFENDANT VESSEL.  The auction will occur

11  pursuant to this Order no earlier than the first Friday following expiration of a 45 day

12  period following entry of this Order, and no later than the first Friday following

13  expiration of a 60 day period following entry of this Order.  In the event such Friday

14  falls on a national holiday, then the auction will occur the following Friday.  The

15  DEFENDANT VESSEL may be marketed in accordance with the following terms:

16      (a)     Long Beach Yacht Sales will engage in marketing measures in a

17  best faith attempt to generate as much interest by potential buyers as possible in the

18  DEFENDANT VESSEL, in advance of the U.S. Marshal auction;

19      (b)     Plaintiff will provide Long Beach Yacht Sales with an advertising

20  budget to cover the expected actual costs (without markup) of placing advertisements

21  in printed media;

22      (c)     Long Beach Yacht Sales will stage showings aboard the

23  DEFENDANT VESSEL at least twice monthly (provided prospective buyers wish to

24  inspect her), and also on the day preceding the auction date;

25      (d)     Long Beach Yacht sales will, in its sole discretion (as long as it

26  deems the DEFENDANT VESSEL sufficiently seaworthy), schedule one or more sea

27  trials for the benefit of such prospective buyers.  Any such sea trial is restricted to the

28  immediate confines of San Diego Bay and will not exceed one hour.  In addition,

representatives of the Substitute Custodian and Long Beach Yacht Sales must be aboard at all times during sea trials, the DEFENDANT VESSEL must be commanded by a Master holding a current 100 Ton (or greater) U.S. Coast Guard License, and vessel insurance must be effective for such sea trial(s).

   (e) If at the U.S. Marshal auction PLAINTIFF determines that the highest other bid is unreasonably low and it therefore places a credit bid, and the credit bid becomes the highest and successful bid, then Long Beach Yacht Sales will not receive a commission; otherwise, it will receive a commission out of the proceeds in an amount equal to three percent (3%) of the final auction selling price, with a minimum of $5,000.00.

  (3)  During the 45 to 60 day period Long Beach Yacht Sales will be permitted to show the DEFENDANT VESSEL, where she lies in custody, to those who have expressed an interest in purchasing the vessel, provided that at all times when they are aboard a representative of the Substitute Custodian and Long Beach Yacht Sales is also aboard; and

  (4) During said 45 to 60 day period in no event (during sea trials or otherwise) will the DEFENDANT VESSEL leave the confines of San Diego Bay; and

  (5) The U.S. Marshal will cause notice of the sale of the arrested vessel to be published for at least seven days immediately before the date of the sale, pursuant to Civil Local Rule E.1(e)(1) and in accordance with 28 U.S.C. sections 2001-2004; and

  (6) Consistent with Civil Local Rule E.1(e)(2), such public notice will specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal, certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price will be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

(7) The sale of the DEFENDANT VESSEL by the U.S. Marshal will "stand confirmed as of course, without the necessity of any affirmative action thereby by a judge, except that no sale will stand confirmed until the buyer has complied fully with the terms of the purchase," as provided for by Civil Local Rule E.1(e)(2); and

(8) Plaintiff, having demonstrated it maintains a secured preferred maritime mortgage lien interest in the DEFENDANT VESSEL pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. section 31301, *et seq*.), and being the only claimant in this action asserting a maritime claim against her, Plaintiff is entitled as the senior maritime lien claimant, pursuant to Civil Local Rule E.1(e)(2), to credit bid at the auction of the DEFENDANT VESSEL, without payment of cash, a sum equal to its secured interest in the DEFENDANT VESSEL, as specified in Plaintiff's Points and Authorities in Support of the instant Motion and the supporting Declaration of Mike Churchwell, including principal, contractually recoverable interest, late fees, attorneys' fees, expenses of recovery, and *custodia legis* and other costs of suit in the total amount of $274,453.07(as averred in the Complaint, calculated through July 11, 2012), plus further *custodia legis* expenses, attorneys' fees and additional costs of suit accruing between July 11, 2012 and the date of the U.S. Marshal sale.

**IT IS SO ORDERED**.

DATED:  March 1, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge